JOHNSON CO. v. PENNSYLVANIA STEEL CO.

(Circuit Court, E. D. Pennsylvania. January 23, 1894.)

No. 59.

1. PATENTS—INVENTION—CABLE-RAILWAY CROSSINGS.
    In a cable-railway crossing, where girder guard rails are to cross slot rails, and be secured thereto, there was no invention in cutting a notch in the top of the slot rails, and thus depressing the girder guard rail sufficiently, without cutting away its floor, so as to weaken the guard.

2. SAME.
    The Entwistle patent No. 367,746, for a "girder slot rail crossing," is void, as to the second claim, for want of invention.

This was a suit in equity by the Johnson Company against the Pennsylvania Steel Company for infringement of a patent.

George Harding and George J. Harding, for complainant.
Joshua Pusey and Philip T. Dodge, for respondent.

DALLAS, Circuit Judge. This is a suit upon letters patent No. 367,746, dated August 2, 1887, granted to Edward B. Entwistle, for "girder slot rail crossing." It contains two claims, and the bill involves both of them; but upon the hearing the complainant,

without making any general admission with respect to the first claim, stated that this case would be pressed only as to the second claim, which is as follows:

(2.) A slot rail and girder rail crossing, consisting of main girder guard rails and slot rails, secured together at the proper angle, and with the guard rails overlapping the heads of the slot rails, the latter rails being partially cut away, so as to preserve the floor of the guard rails intact, substantially as and for the purposes set forth.

"Slot rails" are those which form the sides of the slot or orifice through which passes the shank of the grip used in the operation of a cable. A "main girder guard rail" is a car bearing rail of the form shown, with sufficient accuracy for the present purpose, in the accompanying sketch of an end view thereof. A is the part upon which the wheels of the cars rest or move, and is called the "head;" B is the floor; C is the guard; and D is the web.

Slot rails and girder guard rails were old. To secure them together at the proper angle, and with the main rails overlapping the heads of the slot rails, nothing was required but the common knowledge and skill of a mechanic. In fact, in what is known in the case as the "Chicago Crossing," such securing together and overlapping had been actually resorted to in constructing a crossing of slot rails with the rails of a steam railroad. In that instance, all except the head of the main rail was cut away, so as to conform it to the side of the slot rail, and admit of the head only of the former overlapping the top of the latter, and such overlapping was in fact made; and the two rails, though not directly connected, were indirectly secured together by means of their separate bearings upon the same I beams. It is true the main rail of the Chicago crossing was a T rail, not a guard rail, and the head of the T rail was wholly exposed above the slot rail, whereas the patentee in this case was dealing with a guard rail, and had it in mind, as he stated in his specification, that it is desirable that the head and guard be not exposed too much above the slot rail crossed. Accordingly, the particular matter to which his attention seems to have been directed was the making of the crossing in such manner that the undesirable exposure

of the head and guard would be avoided. An obvious way to accomplish this would have been to cut away the floor of the car-bearing rail, so as to lower its head and guard to the desired point; but, as is also set forth in the specification, "it is advisable not to cut the floor entirely away, as the guard would then be rendered weak, and not well sustained." Consequently a partial cutting away of the slot rails was resorted to, instead of cutting the floor of the guard rail objectionably, and thus a notch was formed in the top of the slot rails, in which the guard rail was placed, and by this means its head and guard were sufficiently depressed, without rendering its guard weak and not well sustained. Did this involve invention? This, I think, is the substantial question in the case. It is undoubtedly true that "it is not always safe to consider that there has been no invention because it appears obvious and simple;" but, on the other hand, as said by Mr. Justice Bradley in Atlantic Works v. Brady, 107 U. S. 200, 2 Sup. Ct. 225, "it was never the object of those laws [the patent laws] to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures." Hence the difficulty, whenever the question of sufficiency of invention arises, is to determine whether the subject-matter of the particular patent should be considered an invention, however obvious and simple it may appear, or be held to be a "trifling device, * * * which would naturally and spontaneously occur to any skilled mechanic or operator." In the present case, after very careful consideration of the evidence and examination of the exhibits, I have reached the conclusion that the device claimed is of the latter class. There was nothing new, or in which invention was involved, in securing crossing rails together at the proper angle, and with car-bearing rails overlapping slot rails; and I am unable to perceive that anything beyond mechanical skill was exercised in cutting away a part of the slot rails, so as to make the desired joint with a girder guard without exposing its head and guard too much above the slot rail, and without so cutting the floor of the guard rail as to weaken the guard.

A decree willl be entered dismissing the bill with costs.