McCLAVE–BROOKS CO. v. M. H. TREADWELL CO. et al.

(District Court, M. D. Pennsylvania. March 7, 1914.)

No. 108.

1. PATENTS (§ 328*)—VALIDITY—ANTICIPATION.

The McClave patent, No. 831,178, for an improvement in rocking grate bars having fuel supporting caps beveled downwardly at the edges from the top surface, and one edge of each cap overlapping its neighbor, permitting expansion without making large initial spaces between the caps, and without offering obstruction to the movement of fuel on the grate surface, required for the burning of small-sized anthracite coal, *held* void for anticipation.

2. PATENTS (§ 328*)—INVENTION.

The McClave patent, No. 831,178, for an improvement in rocking grates for the burning of small-sized anthracite coal, in so far as it provided for cutting or rounding off the angular edge of the grate points where they overlap each other, so as to avoid interference with the fireman's cleaning hoe if a point should turn or ride up beyond its adjoining neighbor, was a mere application of mechanical skill, which would naturally have suggested itself to a fireman or foundryman, and did not constitute patentable invention.

In Equity. Suit by the McClave-Brooks Company against the M. H. Treadwell Company and another for patent infringement. Bill dismissed.

Welles & Torrey, of Scranton, Pa. (Melville Church, of Washington, D. C., of counsel), for complainant.

A. A. Vosburg, of Scranton, Pa., and Clifton V. Edwards, of New York City (Julian S. Wooster, of New York City, of counsel), for defendants.

WITMER, District Judge. This suit is brought by the McClave-Brooks Company against the Stoever Foundry & Manufacturing Company and the M. H. Treadwell Company for infringement of letters patent No. 831,178, for improvement of grates, granted September 18, 1906, to William McClave, complainant's assignor. The case is at issue on plea to the jurisdiction of the Treadwell Company and on answer filed by the Stoever Company. The answer sets up the usual defense of want of invention, anticipation by prior patents and alleged prior uses, and noninfringement.

Though the claims of the patent are silent, the inventor testifies, and it also appears from the specifications and general design of the con-

struction, that it was his purpose, and he so constructed his grate, to serve the purpose of economically burning very small sizes of anthracite fuel, generally known as Nos. 1 and 2 buckwheat. The general nature of the invention is stated in the opening paragraph of the specification as follows:

"This invention relates to improvements in grates, and particularly to rocking grates, which are pivotally mounted or journaled in a combustion chamber of a furnace in such a manner that they are capable of being rocked for dumping the material thereon into the ash pit."

The object of the invention appears to provide a grate bar wherein the edges of the rocking bars will not lock or bind together when expanded by heat, nor interfere with the use of the fireman's tools; also to provide the rocking grate bars with edges or noses which will fit together, so as to prevent the running through of fuel between them, and, further, to provide means for tipping the bars in one direction with adjustable means to prevent the overlapping edges or noses from pounding each other. In the language of the specification:

"It is the object of the invention to provide a grate in which rocking bars may be used, the said bars tipping only in one direction for dumping materials from the grate surface, their edges being so shaped as to be capable of moving one upon the other to some extent to permit of the expansion of the bars under great heat and yet not interfere with their being rocked for dumping the materials into the ash pit, not to materially interfere with the free use of fireman's cleaning implements, such as slash bars, hoes, etc., when in normal position. It is the further object of the invention to provide a rocking grate bar with fuel-supporting portions or caps having noses which match and fit upon the noses of adjacent caps, to prevent the running through of fuel and to provide means for rocking the bars in one direction and adjustable means for controlling the return of the bars and prevent them from pounding one upon the other."

These objects are to be obtained by an invention as claimed in recitals of various combinations and permulations of the elements of construction in the patent, numbered 1, 2, 3, 5, 6, 7, 8, 13, 14, and 15, all of which, excepting the eighth and thirteenth, relate solely to the mechanism of the fuel supporting bars as typified in the following claim:

"6. A grate mechanism, comprising rocking grate bars having fuel supporting caps, beveled downwardly at their edges from the top surface, one edge of each cap extending downwardly to a greater extent than the other edge, so that adjacent edges of the bars may lap upon each other, the lapping of the bars permitting of the expansion of the caps under the action of heat without making large initial spaces between the caps, and without offering obstruction to the movement of fuel upon the grate surface, when in normal position."

Claims 8 and 13 add the additional element of "means controlling the extent of movement of the bars, to preserve a space between the said lapping teeth."

Truly the defendant's device embodies means for preserving a space between the lapping teeth of proximate grate caps and for limiting the extent to which said teeth may approach each other. However, these means are vastly different in construction and to some extent in function, as admitted by the patentee, McClave. In the complain-

ant's device, as appears from the drawing, the links (17) by which the several grate bars are simultaneously tilted is connected by a rod (19) operated by a lever (22) which swings against an adjustable stop (25).

The defendant's grate is provided with means cast integral with the journal, namely, a projection on the journal having practically a straight side on it to strike the vertical side of the journal bearing when it is moved, and it is stopped thereby when the grate is rocked to a certain distance.

Grates of the overlapping spaced type are also not new, as shown by the prior patents to Hildreth, 112,246, Steele, 117,007, Scott, 569,-063, and in the German patent 32,664. Admittedly there is no functional difference between defendant's projection on the journal and the rest bar of Scott, or the stop lug in the German patent; hence the defendant's grate cannot be said to infringe complainant's device in its additional elements or means for controlling the bars as to spacing embodied in claims 8 and 13.

As to the remaining claims, typified in claim 6, the proposition submitted appears more difficult. It is very evident that the feature of the device most emphasized lies in the double beveled end of the fuel supporting caps. The manner of their construction and the object to be obtained thereby appears from the specification, as follows:

"Instead of allowing the ends of the grate bars to butt squarely together, or approach each other closely, with a vertical joint between them, through which fuel might drop, the ends are made to overlap, preferably by inclining the end surface, each bar overlapping its neighbor at one end underlapping its other neighbor at the other end. In this way the joint between the ends of adjacent bars is inclined, instead of being vertical, and in consequence of this inclination fine fuel is less apt to drop through if the bars are not in contact; expansion will not cause them to lock tight against each other, since the bar with the overlap will merely slide upon its neighbor, causing that end of the bar to be slightly higher."

The bars with an overlap can, of course, be dropped or tilted in but one direction. This inclination of the end surface, one extending over and the other under its neighbor, produces, of course, an obtuse angle between the top and end surface of one bar (the underlapping bar) and an acute angle between the top and end surfaces of its neighbor (the overlapping bar). When the bar is expanded under the continued action of heat, and by sliding up over the inclined surface of its neighbor has been raised above the level of the surface of this neighbor, there would be a liability of the fireman's hoe to catch on this slightly projecting acute angle, and the patentee therefore proposes to cut it off, either by a plane bevel or by rounding it. In either case the liability of the hoe to catch on the edge of the grate bar would be lessened.

The functions of the two bevels are separate and distinct, as will be noted, and do not affect one another, or co-operate in any way. The function of the lower bevel is to permit the bar to rock in only one direction, and by overlapping its other neighbor will permit the use of small fuel without sifting, and also permit the bar to ride upon the adjoining bar if expanded to which they are liable when heated. The only function of the upper bevel is to prevent obstruction to the hoe or fire tool. These features of the device, the upper and lower bevel of the overlapping edge or end of the fuel-supporting cap, will be considered in their order.

That the defendant's device embodies the structural features and functions shown in the complainant's grate cannot be successfully denied. An effort at comparison is useless, and would indeed be difficult, on account of similarity. All that remains for determination is whether the complainant is entitled to a monopoly in its benefits.

That the patentee was not the first to conceive the idea of the lower

bevel or lapping edges employed in his grate is very evident from the prior patents to Hildreth, Steele and Scott, supra. These patents are for dumping grates in which the edges of the adjoining grate bars are beveled and overlapping, and tilting or dumping in only one direction, preventing fine fuel from dropping through, and riding upon one another under heat expansion. It will be seen that these grates may be readily adapted and used to burn any kind of fuel in so far as the element under consideration is regarded.

[2] Remaining for consideration is the matter of cutting or rounding off the angular edge of the overlapping bar, so as to avoid interference with the cleaning hoe, if the same should turn or ride up beyond its adjoining neighbor. A number of patents were cited in which bars in stationary grates were provided with rounded ends; but I have failed to find that any of them compare in function with those of complainant's device.

It is, however, proven beyond a doubt that long prior to the patent it was common in the practical art to bevel off edges in dumping grates to avoid upward projections. Grates in which the sharp corner of the overlapping edges were cut off vertically, allowing a small clearance space between the level of the overlapping ends, were in use for many years prior to the patent, in the plant of F. C. Linde Company, New York City. A drawing of the bars in use, as well as physical exhibits, were produced in which the downwardly beveled or cut-off ends, as exemplified in the defendant's grate bar, clearly appear. The prior use of other instances of somewhat similar bars, having rounded or cut-off ends, which when assembled in a grate necessarily produce a transverse depression in the surface, have been proven. Though I had not been persuaded to the conclusion reached, I am of the opinion that cutting off the surplus material, as may be regarded the sharp overlapping and extending edges or corners of these fuel supports, does not constitute patentable invention. It is undoubtedly the result of mere mechanical skill, and not invention. The cutting off or rounding of projections would be most natural to suggest itself to even a fireman, so as to avoid the catching of his hoe or slice bar. Any foundryman familiar with the art would know how to do it. In this respect the case resembles Facer v. Midvale Steel Works Co. (C. C.) 38 Fed. 231; Johnson Co. v. Penna Steel Co. (C. C.) 62 Fed. 156; Capital Sheet-Metal Co. v. Kinnear et al., 87 Fed. 333, 31 C. C. A. 3; Parsons Mfg. Co. v. Coe, 185 Fed. 522, 107 C. C. A. 628.

In view of the conclusion reached, the question of jurisdiction raised by the plea of the Treadwell Company does not require notice.

The bill is dismissed, at the cost of the complainant, and an exception is noted for the complainant.